IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CHERYL MARIE STEELE, | ) |
| Plaintiff, | ) ) ) |
| v. | ) CIVIL ACTION NO. 16-0599-MU ) |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) ) ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Cheryl Marie Steele brings this action, pursuant to 42 U.S.C. §§ 405(g), seeking judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying her claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act). The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Doc. 14 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed. R. Civ. P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, … order the entry of a final judgment, and conduct all post-judgment proceedings.")). *See also* Doc. 15. Upon consideration of the administrative record, Steele's brief, the Commissioner's brief, and oral argument presented at the September 14, 2017 hearing before the undersigned Magistrate

Judge, it is determined that the Commissioner's decision denying benefits should be affirmed.[1]

## I. PROCEDURAL HISTORY

Steele applied for a period of disability and DIB, under Title II of the Act, 42 U.S.C. §§ 423 - 425, on October 31, 2013, alleging disability beginning on December 1, 2010. (Tr. 132-33, 134). Her application was denied at the initial level of administrative review on December 11, 2013. (Tr. 67-71). On December 26, 2013, Steele requested a hearing by an Administrative Law Judge (ALJ). (Tr. 73-74). Steele initially appeared at a hearing before the ALJ on January 26, 2015. (Tr. 51-59). That hearing was continued in order for Steele to obtain legal counsel. (Tr. 58). After obtaining counsel, Steele appeared at a supplemental hearing on June 8, 2015. (Tr. 30-50). The ALJ issued an unfavorable decision finding that Steele was not under a disability during the applicable time period on June 26, 2015. (Tr. 20-25). Steele appealed the ALJ's decision to the Appeals Council, and, on October 19, 2016, the Appeals Council denied her request for review of the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner. (Tr. 1-3, 16).

After exhausting her administrative remedies, Steele sought judicial review in this Court, pursuant to 42 U.S.C. §§ 405(g). (Doc. 1). The Commissioner filed an answer and the social security transcript on March 6, 2017. (Docs. 6, 7). Both

---

[1] Any appeal taken from this Order and Judgment shall be made to the Eleventh Circuit Court of Appeals. *See* Doc. 14. ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for the judicial circuit in the same manner as an appeal from any other judgment of this district court.").

parties filed briefs setting forth their respective positions. (Docs. 9, 10). Oral argument was held before the undersigned Magistrate Judge on September 14, 2017. (Doc. 13). The case is now ripe for decision.

## II. CLAIM ON APPEAL

Steele alleges that the ALJ's decision to deny her benefits is in error for the following reason:

1. The ALJ erred by failing to retain a medical expert to determine the onset date of Plaintiff's impairments. (Doc. 9 at p. 2).

## III. BACKGROUND FACTS

Steele was born on March 13, 1958, and was 55 years old at the time she filed her claim for benefits. (Tr. 34). Steele alleged disability due to scoliosis, arthritis, hearing loss, feet problems, carpal tunnel syndrome, lower back problems, neck pain down to her right arm with numbness in her right arm, high blood pressure, and acid reflux. (Tr. 159). She graduated from high school in 1976 and did not take special education classes. (Tr. 160). She worked as a sewing machine operator from 1984 until 2004. (Tr. 193). Steele stopped working in 2004 because the company closed. (Tr. 35). Steele testified that she did not look for work immediately because she wanted to stay home for awhile, but when she wanted to go back to work in 2008, she was not able to because of back problems. (Tr. 35). Steele testified that she is primarily sedentary during the day, but she does cook, clean house, and grocery shop. (Tr. 36-37). After conducting a hearing, the ALJ made a determination that Steele was not under a disability at

any time from December 1, 2005, the alleged onset date, through December 31, 2010, the date last insured, and thus, was not entitled to benefits. (Tr. 20-25).

## IV. ALJ'S DECISION

After considering all of the evidence, the ALJ made the following findings that are relevant to the issues presented in his June 26, 2015 decision:

> **3. Through the date last insured, the claimant had the following medically determinable impairment: scoliosis (20 CFR 404.1521*et seq.*).**
>
> **4. Through the date last insured, the claimant did not have an impairment or combination of impairments that significantly limited the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant did not have a severe impairment or combination of impairments (20 CFR 404.1521 *et seq.*).**
>
> * * *
>
> In reaching the conclusion that the claimant did not have an impairment or combination of impairments that significantly limited her ability to perform basic work activities, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.
>
> Unfortunately, the claimant has not met her burden of proving that she has a severe impairment prior to her date last insured. There is no medical evidence prior to or less than one year and nine months after the date last insured of December 31, 2010 (All Exhibits). Without objective medical evidence during or even within one year of the relevant time period, it is impossible to ascertain the degree of limitation the claimant might have had, if any, prior to December 31, 2010.
>
> On February 23, 2015, Charlie Talbert, M.D., filled out a clinical

assessment of pain form on which he indicated he has been treating the claimant since May 8, 2013 (Exhibit 14F, page 1). He has diagnosed her with degenerative scoliosis and cervical and lumbar disc disease (Exhibit 14F, page 1). He opined that the claimant's pain would distract her from adequately performing her daily activities or work for at least two hours in an eight-hour workday (Exhibit 14F, page 1). He further opined that physical activity would increase the claimant's pain and cause distraction from or total abandonment of task (Exhibit 14F, page 1). He then checks a box indicating that he believes the claimant's pain has been at the level indicated since at least "12/31/2010" (Exhibit 14F, page 2). Little weight is given to this opinion because there is no objective evidence in the file to support such a statement (All Exhibits). The objective evidence in the file begins in October 2012, which is almost two years after the claimant's date last insured. Dr. Talbert admits that he did not start treating the claimant until May 8, 2013; therefore, any opinion he gives is based upon objective evidence that occurred almost three years after the claimant's date last insured. Moreover, because he was not treating the claimant in the year 2010, his statement that she would have had this level of pain since at least December 2010 is not based upon his own independent observations of the claimant's physical condition rather it is based upon the claimant's own personal statements of her condition. Therefore, his opinion is entitled to little weight.

There is some evidence that the claimant's degenerative scoliosis would have been present prior to the claimant's date last insured; however, there is no evidence that this impairment would cause more than a minimal limitation in the claimant's ability to perform work activity at that time. Therefore, it is considered a non-severe impairment prior to October 2012.

At the hearing, the claimant testified that she did not seek medical treatment prior to October 2012 because she did not have medical insurance (Hearing Testimony). She testified that she finally sought treatment in October 2012 because her symptoms became so bad she could no longer walk (Hearing Testimony). There is some evidence in the file that her symptoms did not begin until June-October 2012. Although she indicates she had a car accident in 1999 that caused her some whiplash, she continued to perform work activity until 2004 (Exhibit 1F and Hearing Testimony). At the hearing, she testified

5

that she stopped working because the Dozier Plant closed (Hearing Testimony). She did not testify that she stopped working because of her physical condition (Hearing Testimony). She then testified that she did not seek other employment because she "decided she wanted to take some time off" (Hearing Testimony). She further testified that around 2008 she decided she wanted to go back to work, but could not because of her symptoms (Hearing Testimony).

Unfortunately, the objective evidence in the file does not support her statement that her symptoms began in 2008. On November 26, 2012, she told treating professionals that she had a neck injury in 1999 that "flares up at times" which suggests that her symptoms are not present consistently (Exhibit 5F, page 14). On May 15, 2013, the claimant visited Michael Ellerbusch, M.D., an orthopedist, and she reported that she has had chronic issues that have gotten worse over the past year (Exhibit 4F, page 8). This statement would indicate her symptoms got worse beginning in 2012, which is consistent with the objective medical evidence in the file (All Exhibits). She also reported to a chiropractor that her symptoms began in June 2012 (Exhibit 1F, page 4). She crossed through June 2012 on the first page and put June 1999 (Exhibit 1F, page 2). However, a June 1999 onset date is not supported by other statements she has made in the record or the objective medical evidence in the file (All Exhibits).

Similarly, on June 3, 2013, she visited Gordon J. Kirschberg, M.D., a neurologist, for evaluation of some tingling and weakness in her right arm that she has "had for about a year or so" (Exhibit 3F, page 2). This statement would also be consistent with an increase in symptoms around the year 2012. On March 18, 2015, the claimant visited William Craig, M.D. and reported that she had low back symptoms "for months", which would indicate an onset in the year 2014 (Exhibit 17F, page 4). Records from Dozier Family Health clinic indicate that in the year 2012, the claimant only sought treatment for hypertension (Exhibit 18F, page 15). She did not mention lower back pain until 2013 (Exhibit 18F, page 15).

Unfortunately, the claimant has not met her burden of proving a severe impairment prior to her remote date last insured, December 31, 2010. All objective evidence in the file occurs after October 2012.

6

> After considering the evidence of record, the undersigned finds that there is no objective medical evidence of any severe impairment contained in the file prior to the claimant's date last insured. Therefore, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible because there is no objective medical evidence to support the diagnosis of any severe impairment prior to the claimant's date last insured.
>
> **5. The claimant was not under a disability, as defined in the Social Security Act, at any time from December 1, 2005, the alleged onset date, through December 31, 2010, the date last insured (20 CFR 404.1520(c)).**

(Tr. 22-25).

## V. DISCUSSION

Eligibility for DIB requires that the claimant be disabled. 42 U.S.C. §§ 423(a)(1)(E). The claimant must establish disability on or before her date last insured ("DLI"). A claimant is disabled if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A). The impairment must be severe, making the claimant unable to do the claimant's previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-11. "Substantial gainful activity means work that … [i]nvolves doing significant and productive physical or mental duties [that] [i]s done (or intended) for pay or profit." 20 C.F.R. § 404.1510.

In all Social Security cases, an ALJ utilizes a five-step sequential evaluation in determining whether the claimant is disabled:

7

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairment in the regulations; (4) if not, whether the claimant has the RFC to perform her past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Comm'r of Soc. Sec.,* 457 F. App'x 868, 870 (11th Cir. 2012) (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f); *Phillips v. Barnhart,* 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted). The claimant bears the burden of proving the first four steps, and if the claimant does so, the burden shifts to the Commissioner to prove the fifth step. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

If the claimant appeals an unfavorable ALJ decision, the reviewing court must determine whether the Commissioner's decision to deny benefits was "supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178 (11th Cir. 2011) (citations omitted); *see* 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel*, 631 F.3d at 1178 (citations omitted). "In determining whether substantial evidence exists, [the reviewing court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The reviewing court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Id*. When a decision is supported by substantial evidence, the reviewing court

must affirm "[e]ven if [the court] find[s] that the evidence preponderates against the Secretary's decision." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).

In his decision in Steele's case, the ALJ first determined that her DLI was December 31, 2010. (Tr. 22). He next began the process of applying the five-step sequential evaluation to Steele's claim. At step one, if the ALJ finds that the claimant is currently engaged in substantial gainful activity ("SGA"), the claim is denied. 20 C.F.R. §§ 404.1520(a)(4)(I) & (b); see 20 C.F.R. §§ 404.1510, 404.1572. In the instant case, the ALJ found that Steele did not engage in SGA from her alleged onset date (December 1, 2005) through her DLI. (Tr. 22).[2] Therefore, he proceeded to an evaluation of step two. At step two, if the claimant does not have a severe impairment or combination of impairments that significantly limits the claimant from performing basic work activities, the claim is denied. See 20 C.F.R. §§ 404.1520(a)(4)(ii) & (c), 404.1521. After evaluating all medical records and Steele's testimony, the ALJ found that Steele's medically determinable impairment of scoliosis was not severe within the meaning of the regulations at any time on or before her DLI of December 31, 2010. (Tr. 22-25). That finding ended the sequential evaluation and, thus, the ALJ found that Steele was not disabled within the meaning of the Act during the period at issue, which was December 1, 2005 through her DLI of December 31, 2010. (Tr. 25).

Before this Court, Steele argues that the ALJ erred by failing to retain a medical expert to determine the onset date of her impairment. In support of her

---

[2] During at least a portion of that period, Steele made the choice to not return to the work force after the company at which she had been working closed. (Tr. 35).

9

argument, Steele relies on Social Security Ruling 83-20 and HALLEX I-2-6-70(A). Social Security Ruling 83-20 states, in relevant part:

In disabilities of nontraumatic origin, the determination of onset involves consideration of the applicant's allegations, work history, if any, and the medical and other evidence concerning impairment severity. The weight to be given any of the relevant evidence depends on the individual case…. Medical reports containing descriptions of examinations or treatment of the individual are basic to the determination of the onset of disability. The medical evidence serves as the primary element in the onset determination…. In determining the date of onset of disability, the date alleged by the individual should be used if it is consistent with all the evidence available. When the medical or work evidence is not consistent with the allegation, additional development may be needed to reconcile the discrepancy. However, the established onset date must be fixed based on the facts and can never be inconsistent with the medical evidence of record…. In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred sometime prior to the date of the first recorded medical examination. e.g., the date the claimant stopped working. How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred…. The available medical evidence should be considered in view of the nature of the impairment…. The onset date should be set on the date when it is most reasonable to conclude from the evidence that the impairment was sufficiently severe to prevent the individual from engaging in SGA (or gainful activity) for a continuous period of at least 12 months or result in death. Convincing rationale must be given for the date selected.

SSR 83-20 (S.S.A.), 1983-1991 Soc. Sec. Rep. Serv. 49, 1983 WL 31249 (Jan. 1, 1983). The court notes that Social Security Rulings are not binding on federal courts. *See Caces v. Comm'r, Soc. Sec. Admin.*, 560 F. App'x 936, 938 (11th Cir. 2014). However, courts in this circuit generally accord the rulings respect and deference if the underlying statute is not clear and the legislative history offers no guidance. *Id.*

HALLEX I-2-6-70(A) states that "[a]n ALJ is encouraged to consult with

an ME [medical expert] when the claimant alleges disability that began before his or her date last insured and the facts may conceivably support the claim. SSR 83-20." HALLEX I-2-6-70(A) n.3, 1993 WL 751901 (Dec. 12, 2013). This HALLEX recommendation provides guidance to an ALJ who is charged with determining an onset date for an allegedly limiting disability; "[h]owever, it suggests the use of a medical expert, rather than mandating it, and thus cannot fairly be the basis of error on the part of the ALJ." *See Lanier v. Colvin*, Civ. A. No. 1:15-cv-00255-N, 2016 WL 4386086, *4 (S.D. Ala. Aug. 16, 2016).

While these rulings may be instructive in a case in which it is necessary to ascertain the exact date of onset to determine the period of disability, in this case, the Court finds that they are inapplicable because the ALJ was able to make a finding of no disability based on the record, which contained sufficient evidence to support such a finding. With regard to Steele's impairment, in addition to her own testimony, the ALJ had medical treatment records from Dr. Charlie Talbert, Dr. Michael Ellerbusch, Dr. Gordon Kirschberg, Dr. William Craig, and Dozier Family Health Clinic. Based on these records and the opinions contained therein, the ALJ found that Steele's impairment was not severe during the relevant time period, specifically noting that, in addition to there being no medical evidence prior to Steele's DLI, she did not seek treatment for any problems potentially related to scoliosis until October of 2012. (Tr. 23). In his decision, the ALJ cited a number of medical records, which support his conclusion that Steele did not have a severe impairment prior to her DLI, and he

11

explained why he gave little weight to the contrary opinion of Dr. Talbert and to Steele's own testimony.

On February 23, 2015, more than four years after Steele's DLI, Dr. Talbert completed a clinical assessment of pain form, indicating that he had been treating her since May 8, 2013, more than two years after her DLI. (Tr. 23, 338-39). Dr. Talbert diagnosed her with degenerative scoliosis and cervical and lumbar disc disease. (Tr. 23). He opined that her pain would distract her from adequately performing her daily activities or work for at least two hours in an eight-hour workday. (*Id.*). Dr. Talbert further opined that physical activity would increase Steele's pain and cause distraction from or total abandonment of task. (Tr. 23-24). He then checked a box indicating that he believed that her pain had been at the level indicated "since at least 12/31/10." (Tr. 24).

The ALJ gave little weight to Dr. Talbert's opinion regarding her pain level on December 31, 2010 because he found no objective evidence in the record to support Talbert's blanket conclusion. (*Id.*). The objective evidence of record began in October of 2012, which is almost two years after Steele's DLI. (Tr. 24, 371-74). Because he was not treating Steele in 2010, Dr. Talbert's statement that she would have had this level of pain since at least December 2010 is not based upon his own independent observations of her physical condition; rather it appears that it must have been based on her own personal statements to him of her condition, which were not consistent with the statements she made to other treating physicians regarding the onset of her back problems. (Tr. 24). Based on the foregoing, the Court finds that the ALJ's

12

decision to give little weight to Dr. Talbert's opinion regarding whether she had a severe impairment prior to her DLI was based on substantial evidence.

The ALJ noted that there was some evidence that Steele's degenerative scoliosis would have been present before her DLI; however, there was no evidence that this condition would cause more than a minimal limitation in her ability to perform work activity at that time. (*Id*.). The ALJ concluded that her condition was a non-severe impairment prior to 2012. (*Id*.) As previously noted, Steele last worked in 2004. (Tr. 24, 35). She stopped working because the plant closed, and she did not look for other work at the time because she "wanted to stay home for a while." (*Id.*). She testified that she decided she was ready to go back to work around 2008, but was unable to do so because "[m]y back started bothering me." (*Id*.). However, as noted above, the ALJ found that the objective evidence of record does not support her allegation that her symptoms began in 2008. (Tr. 24). Specifically, on November 26, 2012, the evidence showed that Steele told treating professionals that she had a neck injury in 1999 that "flares up at times," which suggested that her symptoms were not consistently present at that time. (Tr. 24, 261). On May 15, 2013, she visited Dr. Ellerbusch, an orthopedist, and reported that she had chronic issues that had gotten worse over the past year. (Tr. 24, 234). This statement appears to indicate that her symptoms got worse beginning in 2012, which the ALJ noted was consistent with other evidence. (Tr. 24). In a form completed for a chiropractor, Steele reported that her symptoms began in June of 2012. (Tr. 24, 207). Earlier in that same form, she changed "June

13

2012" to "June 1999." (Tr. 24, 205). However, the ALJ found that a June 1999 onset date was not supported by other statements Steele made or by the objective evidence. (Tr. 24).

On June 3, 2013, Steele saw Dr. Kirschberg, a neurologist, for evaluation of some tingling and weakness in her right arm "that she has had for about a year or so." (Tr. 24, 225). The ALJ found that this evidence was also consistent with an increase in symptoms around the year 2012, well after her DLI. (Tr. 24-25). On March 18, 2015, Steele saw William Craig, M.D., and reported that she had experienced low back symptoms "for months," which would indicate an onset in the year 2014, again well after her DLI. (Tr. 25, 347). Finally, records from Dozier Family Health clinic indicate that, in the year 2012, Steele sought treatment for hypertension, but she did not mention lower back pain until 2013. (Tr. 25, 372).

The issue presented here is whether the foregoing evidence was sufficient to support the ALJ's finding that Steele did not suffer from a "disability" as defined by the Act on or before her DLI or whether the ALJ should have called upon a medical expert to ascertain the onset date of Steele's severe impairment. Addressing the argument that SSR 83-20 required the use of a medical expert to ascertain onset date, the Eleventh Circuit has held that SSR 83-20 "is applicable **only after there has been a finding of disability** and it is then necessary to determine when the disability began." *Caces,* 560 F. App'x at 939; *see also Klawinski v. Comm'r of Soc. Sec.*, 391 F. App'x 772, 776 (11th Cir. 2010) (emphasis added) (holding that "the ALJ did not contravene SSR 83-20 because

14

the ALJ ultimately found that Klawinski was not disabled"); *Eichstadt v. Astrue*, 534 F.3d 663, 667 (7th Cir. 2008) (finding that SSR 83-20's statement urging the ALJ to seek an opinion from a medical expert only applies "after a finding of disability has been made"). In this case, the ALJ found that Steele was not disabled prior to December 31, 2010, the DLI; therefore, there was no need to determine the onset date. *Id*. In addition, even in cases in which the determination of an onset date is necessary, the date on which an impairment became "disabling" as required by the Act must be based on a "legitimate medical basis." *See* SSR 83-20. Because Steele did not produce any medical evidence suggesting the presence of a disabling impairment at any time prior to the expiration of her insured status, it is "difficult to see how any medical examiner could have provided an opinion, grounded in the requisite 'legitimate medical basis,' that her now-diagnosed [scoliosis] rendered her 'disabled'" on or before December 31, 2010. *Eichstadt*, 534 F.3d at 667; *see also Sabillon-Perdomo v. Colvin*, No. 8:14-cv-2826-T-AEP, 2016 WL 7428798, * 6 (M.D. Fla. Mar. 31, 2016) (holding that "[g]iven the complete lack of medical records to establish a finding of disability prior to age 22, there is simply no need to make an inference regarding an onset date because any such inference would invariably have to be without a legitimate medical basis").

In this case, the ALJ clearly enunciated his reason's for the conclusions he made based upon the numerous medical opinions in the record. Because sufficient evidence supports the ALJ's conclusion that Steele did not suffer from a

15

disability on or before the date of her DLI, the Court finds that the ALJ did not err by not retaining a medical expert to opine on the date of onset.

## **CONCLUSION**

As noted above, it is not this Court's place to reweigh the evidence or substitute its judgment for that of the Commissioner. It is well-established that this Court is limited to a determination of whether the ALJ's decision is supported by substantial evidence and based on proper legal standards. The Court finds that the ALJ's Decision that Steele is not entitled to benefits is supported by substantial evidence and based on proper legal standards. Accordingly, it is **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff Cheryl Marie Steele benefits be **AFFIRMED**.

**DONE** and **ORDERED** this the **28th** day of **September, 2017**.

s/P. BRADLEY MURRAY
**UNITED STATES MAGISTRATE JUDGE**
